1  Bingham McCutchen LLP
   STEVEN N. MACHTINGER (SBN 61973)
2  JOHN D. PERNICK (SBN 155468)
   GEOFFREY S. BECKHAM (SBN 224126)
3  Three Embarcadero Center
   San Francisco, CA  94111-4067
4  Telephone:  415.393.2000
   Facsimile:  415.393.2286
5
   Attorneys for Plaintiff
6  Herbert J. Sims & Co., Inc.

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  HERBERT J. SIMS & CO., INC.,                    No. C07-04777 MJJ

12           Plaintiff,                             **PLAINTIFF'S NOTICE OF MOTION
          v.                                        AND MOTION FOR PRELIMINARY
13                                                  INJUNCTION AND
    MARK ROVEN, JAMES DARDEN III, ROD               MEMORANDUM OF LAW IN
14  BUTTERFIELD, STEVE BARES, JAY                   SUPPORT THEREOF**
    MAGWIRE, CAROLYN MAGWIRE,
15  DOROTHY MCCARTY, RICHARD                        Date:    December 4, 2007
    TEERLINK, ELENORA CRONE, NELLIE                 Time:    9:30 a.m.
16  MORISON, SCOTT M. CRONE, SCOTT R.               Dept:    11, 19th Floor
    CRONE, AND NADINE VANDERLANES,                  Before:  Judge Jenkins
17
             Defendants.
18

19

20

21

22

23

24

25

26

27

28
   A/72265618.2/3005090-0000326991

NOTICE OF MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF LAW IN SUPPORT

**NOTICE OF MOTION**

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT at 9:30 a.m. on December 4, 2007, or as soon thereafter as counsel may be heard, in Courtroom 11 of the above-entitled Court, Plaintiff Herbert J. Sims & Co., Inc., will move for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 to restrain and enjoin Defendants Mark Roven, James Darden III, Rod Butterfield, Steve Bares, Jay Magwire, Carolyn Magwire, Dorothy McCarty, Richard Teerlink, Elenora Crone, Nellie Morison, Scott M. Crone, Scott R. Crone, and Nadine Vanderlanes and each of their heirs, executors, administrators, successors, assigns, attorneys and agents, and all those in active concert or participation with them from pursuing their claims against Plaintiff in the arbitration pending before FINRA-DR., Arbitration Number 07-01307, entitled, *Mark Roven, et al. v. Herbert J. Sims & Co.* (the "Arbitration").

This motion is made on the ground that immediate and irreparable injury will result to Plaintiff unless the Arbitration is enjoined pending a trial of this action, and will be based on this Notice of Motion, the attached Memorandum of Points and Authorities, the attached declarations of Steven N. Machtinger and Barbara Desiderio and any other evidence or argument the Court should consider.

**MEMORANDUM OF LAW**

## I. INTRODUCTION

Plaintiff Herbert J. Sims & Co., Inc. ("Sims") is a registered broker-dealer and a member of the Financial Industry Regulatory Authority ("FINRA"). As a FINRA member, Sims is required to arbitrate claims filed with FINRA's dispute resolution entity, FINRA-DR, if those claims meet certain requirements. However, Sims is required to arbitrate claims only if: (1) there is a written agreement between Sims and the claimant(s) requiring arbitration or (2) the dispute is between a "customer" and Sims and raised in connection with Sims's business activities.

On April 1, 2007, the defendants in this action filed a Statement of Claim with FINRA-DR's predecessor, NASD-DR.[1] Defendant James Darden III ("Darden") is an investment advisor. He is not employed by Sims. The remaining defendants are clients of Darden who have hired him to give them investment advice. The Statement of Claim alleges that Sims committed wrongdoing in connection with alleged recommendations of certain tax-exempt municipal bonds. But Darden and the other defendants do not have any written agreement with Sims requiring arbitration of these claims. And none of them has ever been a customer of Sims. The sole basis for defendants' Statement of Claim is that a Sims employee, Scott Drayer ("Drayer"), made allegedly misleading statements about the bonds to Darden and that Darden, thereafter, invested in the bonds on behalf of his clients, the other defendants, at another brokerage firm.

Defendants' allegations regarding Darden's conversations with Drayer are not sufficient to make defendants "customers" of Sims for the purpose of requiring Sims to arbitrate this dispute. Indeed, in *Brookstreet Securities Corporation v. Bristol Air, Inc.*, 2002 U.S. Dist. LEXIS 16784 (N.D. Cal. Aug. 2002), this Court held that the fact that an investment advisor had dealings with a broker allegedly on behalf of his clients was not sufficient to turn the advisor's

---

[1] In July 2007, the National Association of Securities Dealers, Inc. ("NASD") became known as FINRA and NASD-DR became known as FINRA-DR.

clients into customers of the broker.

Consequently, Sims has not agreed to, and is not required to, arbitrate this dispute. Compelling a party to appear in arbitration to which it did not agree is *per se* irreparable harm. Therefore, the Court should enjoin defendants from proceeding with the FINRA arbitration proceeding they have filed against Sims.

## II.     BACKGROUND FACTS

### A.     The Statement of Claim

On April 1, 2007, Mark Roven, James Darden III ("Darden"), Rod Butterfield, Steve Bares, Jay Magwire, Carolyn Magwire, Dorothy McCarty, Richard Teerlink, Elenora Crone, Nellie Morrison, Scott M. Crone, Scott R. Crone and Nadine Vanderlanes (collectively "claimants" and, with the exception of Darden, the "Investors") initiated an arbitration proceeding against Sims before what is now known as FINRA-DR by filing a Statement of Claim.  Declaration of Steven N. Machtinger ("Machtinger Decl.") Ex. A ("Statement of Claim").

The Statement of Claim alleges that the Investors were clients of Darden, a registered investment advisor doing business through a firm called Integrity Financial Management.  The claimants allege that between March 2002 and July 2003 Darden purchased tax-exempt municipal bonds for the Investors in reliance on oral misrepresentations made by Scott Drayer ("Drayer"), a broker who worked for Sims.  The bonds had been issued to finance a Continuing Care Retirement Community in Alabama known as Regency Pointe.  According to the Statement of Claim, Drayer told Darden that these bonds "would make a great investment for Mr. Darden's clients" and that they were a "very secure investment."  Even though he knew there was a prospectus available, Darden "had no reason, at that time, to doubt Mr. Drayer's word," so Darden "decided to make an initial investment of approximately $500,000 for some of his low risk tolerance clients. By July of 2003, Mr. Darden had bought $495,000 more, making the total ownership of his clients $995,000."  *Id*. at 3.

The Statement of Claim asserts that the bonds were unsuitable investments for the Investors in light of their financial circumstances and investment objectives and that Sims

breached fiduciary, contractual and other duties to them. *Id.* at 8-9. The Investors seek to recover $1 million they allegedly lost as a result of these investments. *Id.* at 9. They also seek recovery under the California Elder Abuse statute, Welfare & Institutions Code Section 15600 *et seq.*, and under various other theories. *Id.* at 10-17. Darden alleges that as a result of his clients' losses, his investment advisory business was ruined, causing him to lose $1 million, which he seeks to recover from Sims as damages. *Id.* at 9-10. The claimants also seek an award of costs, punitive damages, interest, attorney's fees and costs and other relief. The claimants have requested that the arbitration be held in San Francisco, California, which is the hearing location closest to where the majority of claimants reside. *Id.* at 2.

### B. Sims's Investigation of the Statement of Claim.

After receiving the Statement of Claim, Sims reviewed its records to determine its relationship with the claimants. What Sims discovered, and the Statement of Claim omits, is that none of the claimants was ever a customer of Sims. None of the claimants ever opened or maintained a brokerage account with Sims. None of the Investors ever had any contact of any kind with Sims. Sims knew nothing about any of the Investors and indeed had never heard of them until it was served with the Statement of Claim. Sims has never sent any confirmations, monthly statements, statements of account or other customer information to Darden or any of the Investors. It has never provided any investment services or other services to any of the claimants, and has never received any payments of money or anything of value from any of the claimants. Sims believes that Darden opened accounts for or on behalf of the Investors at another brokerage firm, Muriel Siebert & Co., Inc. ("Siebert"); that he caused Siebert to purchase Regency Pointe bonds from Sims; and that he caused the Investors to purchase the bonds from Siebert in one or more accounts Siebert maintained for them or on their behalf. Declaration of Barbara Desiderio ("Desiderio Decl.") ¶ 3.

### C. Procedural Status.

On September 17, 2007, counsel for Sims notified FINRA-DR that Sims was declining to submit to arbitration of the claimants' claims because Sims had not entered into any arbitration agreements with any of the claimants and because none of the claimants are or have

been its customers. Machtinger Decl. Ex. B. On the same day, Sims filed a Complaint for Declaratory and Injunctive Relief in this Court seeking both a declaration that the claimants in this matter are not its customers and an order enjoining them from pursuing their claims in arbitration. Subsequently, FINRA-DR informed counsel for Sims that FINRA-DR's policy is that it will continue to move a claim through the arbitration process unless and until the parties stipulate to a stay of the arbitration or a court orders that the arbitration be stayed. Machtinger Decl. ¶ 4. The claimants have not agreed to a stay. *Id.* Accordingly, Sims has moved that this Court issue an order staying the arbitration.

## III.     ARGUMENT

### A.     Legal Standards for Granting Preliminary Injunction

To obtain a preliminary injunction, a party must demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable injury if relief is not granted, or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in the moving party's favor. *See Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1448 (9th Cir. 1998). A preliminary injunction "is not a preliminary adjudication on the merits, but a device for preserving the status quo and preventing irreparable loss of rights before judgment." *Textile Unlimited, Inc. v. A..BMH and Co., Inc.*, 240 F.3d 781, 786 (9th Cir. 2001).

Federal district courts have the authority to grant a preliminary injunction in the exercise of their equitable powers. *See* Fed. R. Civ. Proc. 65. As this Court is acting in equity, the decision to enter a preliminary injunction is left to its discretion rather than that of the arbitration panel. *See Textile Unlimited*, 240 F.3d at 786 (district court did not abuse discretion granting preliminary injunction to enjoin a pending arbitration).

### B.     Plaintiff Is Entitled to a Preliminary Injunction Preventing Arbitration From Proceeding Before FINRA-DR

#### 1.     Plaintiff Is Likely to Succeed on the Merits.

##### a.     Under the Code of Arbitration Procedure, Sims is Not Required to Arbitrate Claims Brought By Parties Who Are Not Its "Customers."

As a member of FINRA, Sims is required to arbitrate certain, but not all, disputes submitted to the regulatory organization. In other words, unless compelled under the rules of FINRA to defend a submitted claim in arbitration, member firms such as Sims may contest FINRA's jurisdiction to adjudicate the dispute. Rule 12200 of the NASD Code of Arbitration (the "Code"), entitled "Arbitration Under an Arbitration Agreement or the Rules of NASD," is applicable to claims, such as the claims in this case, that were filed on or after April 16, 2007. Machtinger Decl. Ex. C.[2] Section 12200 identifies those disputes which a member firm is required to arbitrate. Parties must arbitrate a dispute under the Code if arbitration is either:

> (1) Required by a written agreement, or (2) Requested by the customer and
>
> (a) The dispute is between a customer and a member or associated person of a member; and
>
> (b) The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company."

Sims has not entered into any written agreements with any of the claimants with respect to arbitration or any other matter. Accordingly, provision (1) of Rule 12200 is inapplicable and Sims is required to arbitrate this matter only if provision (2) applies. Provision (2) of Rule 12200 requires Sims to comply with the claimants' request to arbitrate this dispute if the claimants are "customers" and if the dispute arises in connection with Sims's business activities. Sims concedes that the dispute arises in connection with its business activities because its agent, Drayer, had conversations about the bonds with Darden. (The actual content of those discussions is a matter of dispute.) Although the connection is more attenuated, the dispute also arguably arises in connection with Sims's business if Sims sold bonds to Siebert that Darden ultimately placed into the Investors' accounts. Thus, the question of whether Sims

---

[2] This rule replaced NASD Code Section 10301 and is substantially identical to it. (In its release approving comprehensive amendments to the NASD Code of Arbitration Procedure, Release No. 34-55158, January 24, 2007, the SEC noted the NASD's observation that "Proposed Rule 12200 is substantially the same as Rule 10301 of the current Code.")

may be compelled to arbitrate this matter rests on a determination of whether the claimants are "customers" for purposes of Rule 12200.

### b. Defendants Are Not "Customers" of Sims Within the Meaning of the Code of Arbitration Procedure.

Claimants did not have any formal customer relationship with Sims. None of them ever opened or maintained a brokerage account with Sims. Sims never provided any services to any of the claimants and has never received any payments of money or anything of value from any of the claimants. Therefore, none of the claimants was a customer of Sims under the normal understanding of the word.

As this Court recognized in *Brookstreet*, there are some circumstances where an investor is considered a "customer" of a brokerage for the purpose of requiring arbitration even when there is no formal relationship between the customer and the brokerage. But those circumstances typically involve cases where an employee of the brokerage was involved in some sort of direct transaction with the investor. For example, an employee of the brokerage may be involved in "selling away," which occurs when a brokerage employee engages in securities activities (*i.e.* sales of securities) on the side (outside of and without knowledge of the brokerage). In such cases, in part because the investor may not know that the employee was acting on his own, the investor is considered a customer of the brokerage for purposes of requiring arbitration. *See Brookstreet*, 2002 U.S. Dist. LEXIS 16784, *24 (*discussing John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48, 59 (2d Cir. 2001) *and Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 354 (2d Cir. 1995)).

There is no allegation in this case of any securities activities, indeed any contact at all, between any Sims employee and any of Darden's clients. This is not a case in which Sims's employee, Drayer, is alleged to have conducted business with the claimants outside of his firm. He never met the with the Investors, never spoke with them, never made any recommendations to them and never sold any securities to them. In contrast to the facts in *Hancock*, *Oppenheimer* and the other "selling away" cases, Drayer did not have a customer

1  relationship with any of the claimants.

2  In the absence of such "selling away," Darden and his clients can require Sims to
3  arbitrate these claims only if they meet the general definition of a customer: "'[O]ne involved in
4  a business relationship with [a FINRA] member that is related directly to investment or
5  brokerage services.'" *Id.* at *23-24 (*quoting Fleet Boston Robertson Stephens, Inc. v. Innovex*,
6  *Inc.*, 264 F.3d 770, 772 (8th Cir. 2001)).

7  Claimants do not meet that definition. Therefore, the result in this case should be
8  guided by *Brookstreet*, *supra*. In *Brookstreet*, two investors made their investment decisions
9  based on the recommendations of an investment advisor named Stroupe who was unaffiliated
10 with Brookstreet, a broker-dealer. Although Stroupe opened accounts for the investors at
11 Brookstreet and had other dealings with Brookstreet purportedly on their behalf, this court held
12 that the relationship between the investors and Brookstreet was not sufficiently significant to
13 permit a finding that the investors were "customers" of Brookstreet. Consequently, it refused to
14 compel Brookstreet to arbitrate their claims.

15 In this case, as in *Brookstreet*, the investors' investment decisions were caused by
16 an investment adviser who was unaffiliated with the respondent broker-dealer. It was Darden
17 who had a fiduciary relationship with the Investors, not Sims or Drayer. Darden, not Drayer,
18 was the investment professional who knew the Investors' investment objectives and financial
19 circumstances and was thereby able to judge whether an investment recommendation was
20 suitable for them. And it was Darden who presumably chose to have the Investors open accounts
21 at, and become customers of, Siebert rather than Sims.

22 Because no arbitration agreement exists with regard to the claims asserted against
23 Sims, and because the claimants are not "customers" within the meaning of Rule 12200 of the
24 Code, Sims cannot be compelled to arbitrate these claims without its consent.

25     **2.     Plaintiff Has No Adequate Legal Remedy and In the
26           Absence of Relief Will Suffer Irreparable Harm.**

27 As a matter of fundamental fairness, Sims should not be required to expend time
28 and resources defending claimants' claims in an arbitration. Time and resources spent in

1  arbitration are not compensable by monetary award.  *See, e.g., World Group Secs. v. Ko*, 2004
2  U.S. Dist. LEXIS 15726, No. C-03-5055, *22-23 (N.D. Cal. Feb. 11, 2004) (*citing Maryland
3  Cas. Co. v. Realty Advisory Bd. On Labor Rels.*, 107 F.3d 979, 985 (2d. Cir. 1977)).  Indeed,
4  courts have held that compelling a party to appear in arbitration when it did not agree to
5  arbitration would constitute *per se* irreparable harm.  *Gruntal & Co., Inc. v. Steinberg*, 854 F.
6  Supp. 324, 342 (D. N.J. 1994); *see also Textile Unlimited*, 240 F.3d at 786 (referencing as proper
7  the district court's finding that plaintiff would suffer irreparable harm if arbitration was not
8  stayed).
9         Sims has no adequate remedy at law to recover the monetary and human capital it
10 would expend defending an arbitration claimants had no right to bring in the first place.  If the
11 arbitration is not enjoined soon, Sims will be forced to spend its limited resources preparing for
12 it.  This would place a significant financial burden on Sims that would prove to be unnecessary if
13 this Court ultimately decides to issue a permanent injunction in this matter.  Accordingly, this
14 Court should issue a preliminary injunction enjoining the arbitration.

## IV. CONCLUSION

16         For the foregoing reasons, this Court should issue a preliminary injunction
17 enjoining Defendants from pursuing their claims in the pending FINRA arbitration against Sims.
18 DATED:  October 26, 2007

                                        Bingham McCutchen LLP


                                        By: _____/s/_____
                                            Steven N. Machtinger
                                            Attorneys for Plaintiff
                                            Herbert J. Sims & Co., Inc.