1  Bingham McCutchen LLP
   STEVEN N. MACHTINGER (SBN 61973)
2  JOHN D. PERNICK (SBN 155468)
   GEOFF S. BECKHAM (SBN 224126)
3  Three Embarcadero Center
   San Francisco, CA  94111-4067
4  Telephone:  415.393.2000
   Facsimile:  415.393.2286
5
   Attorneys for Plaintiff
6  Herbert J. Sims & Co., Inc.

7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  HERBERT J. SIMS & CO., INC.,                    No. C07-04777 MJJ

12              Plaintiff,                           **[PROPOSED] ORDER GRANTING**
                                                     **MOTION FOR PRELIMINARY**
         v.                                          **INJUNCTION**
13
    MARK ROVEN, JAMES DARDEN III, ROD               Date:       December 4, 2007
14  BUTTERFIELD, STEVE BARES, JAY                   Time:       9:30 a.m.
    MAGWIRE, CAROLYN MAGWIRE,                       Dept.       11, 19th Floor
15  DOROTHY MCCARTY, RICHARD                        Judge:      Hon. Martin J. Jenkins
    TEERLINK, ELENORA CRONE, NELLIE
16  MORISON, SCOTT M. CRONE, SCOTT R.
    CRONE, AND NADINE VANDERLANES,
17
                Defendants.
18

19

20

21

22

23

24

25

26

27

28
    A/72277739.1/3005090-0000326991

1    Plaintiff's Motion for Preliminary Injunction came before this Court for hearing at

2  the above time and place.  Appearances were noted on the record.  After full consideration of the

3  evidence and authorities submitted by counsel, as well as counsel's oral argument, the Court

4  rules that there is good cause to grant plaintiff's motion for preliminary injunction.  The motion

5  is granted for the following reasons:

6  **I.      BACKGROUND**

7        **A.      The Statement of Claim**

8    On April 1, 2007, Mark Roven, James Darden III ("Darden"), Rod Butterfield,

9  Steve Bares, Jay Magwire, Carolyn Magwire, Dorothy McCarty, Richard Teerlink, Elenora

10  Crone, Nellie Morrison, Scott M. Crone, Scott R. Crone and Nadine Vanderlanes (collectively

11  "claimants" and, with the exception of Darden, the "Investors") initiated an arbitration

12  proceeding against Sims before what is now known as FINRA-DR by filing a Statement of

13  Claim.

14    The Statement of Claim alleges that the Investors were clients of Darden, a

15  registered investment advisor doing business through a firm called Integrity Financial

16  Management.  The claimants allege that between March 2002 and July 2003 Darden purchased

17  tax-exempt municipal bonds for the Investors in reliance on oral misrepresentations made by

18  Scott Drayer ("Drayer"), a broker who worked for Sims.  The bonds had been issued to finance a

19  Continuing Care Retirement Community in Alabama known as Regency Pointe.  According to

20  the Statement of Claim, Drayer told Darden that these bonds "would make a great investment for

21  Mr. Darden's clients" and that they were a "very secure investment."  Even though he knew

22  there was a prospectus available, Darden "had no reason, at that time, to doubt Mr. Drayer's

23  word," so Darden "decided to make an initial investment of approximately $500,000 for some of

24  his low risk tolerance clients.  By July of 2003, Mr. Darden had bought $495,000 more, making

25  the total ownership of his clients $995,000."

26    The Statement of Claim asserts that the bonds were unsuitable investments for the

27  Investors in light of their financial circumstances and investment objectives and that Sims

28  breached fiduciary, contractual and other duties to them.  The Investors seek to recover $1

1  million they allegedly lost as a result of these investments.  They also seek recovery under the

2  California Elder Abuse statute, Welfare & Institutions Code Section 15600 *et seq*., and under

3  various other theories.  Darden alleges that as a result of his clients' losses, his investment

4  advisory business was ruined, causing him to lose $1 million, which he seeks to recover from

5  Sims as damages.  The claimants also seek an award of costs, punitive damages, interest,

6  attorney's fees and costs and other relief.  The claimants have requested that the arbitration be

7  held in San Francisco, California, which is the hearing location closest to where the majority of

8  claimants reside.

9       **B.    Sims's Investigation of the Statement of Claim.**

10           After receiving the Statement of Claim, Sims reviewed its records to determine its

11  relationship with the claimants.  What Sims discovered, and the Statement of Claim omits, is that

12  none of the claimants was ever a customer of Sims.  None of the claimants ever opened or

13  maintained a brokerage account with Sims.  None of the Investors ever had any contact of any

14  kind with Sims.  Sims knew nothing about any of the Investors and indeed had never heard of

15  them until it was served with the Statement of Claim.  Sims has never sent any confirmations,

16  monthly statements, statements of account or other customer information to Darden or any of the

17  Investors.  It has never provided any investment services or other services to any of the

18  claimants, and has never received any payments of money or anything of value from any of the

19  claimants.  Sims believes that Darden opened accounts for or on behalf of the Investors at

20  another brokerage firm, Muriel Siebert & Co., Inc. ("Siebert"); that he caused Siebert to purchase

21  Regency Pointe bonds from Sims; and that he caused the Investors to purchase the bonds from

22  Siebert in one or more accounts Siebert maintained for them or on their behalf.

23       **C.    Procedural Status.**

24           On September 17, 2007, counsel for Sims notified FINRA-DR that Sims was

25  declining to submit to arbitration of the claimants' claims because Sims had not entered into any

26  arbitration agreements with any of the claimants and because none of the claimants are or have

27  been its customers.  On the same day, Sims filed a Complaint for Declaratory and Injunctive

28  Relief in this Court seeking both a declaration that the claimants in this matter are not its

A/72277739.1/3005090-0000326991          3

1    customers and an order enjoining them from pursuing their claims in arbitration. Subsequently,

2    FINRA-DR informed counsel for Sims that FINRA-DR's policy is that it will continue to move a

3    claim through the arbitration process unless and until the parties stipulate to a stay of the

4    arbitration or a court orders that the arbitration be stayed. The claimants have not agreed to a

5    stay. Accordingly, Sims has moved that this Court issue an order staying the arbitration.

6    **II.    LEGAL STANDARD**

7            To obtain a preliminary injunction, a party must demonstrate either (1) a

8    combination of probable success on the merits and the possibility of irreparable injury if relief is

9    not granted, or (2) the existence of serious questions going to the merits and that the balance of

10   hardships tips sharply in the moving party's favor. *See Miss World (UK) Ltd. v. Mrs. America*

11   *Pageants, Inc.*, 856 F.2d 1445, 1448 (9th Cir. 1998). Federal district courts have the authority to

12   grant a preliminary injunction in the exercise of their equitable powers. *See* Fed. R. Civ. Proc.

13   65.

14   **III.   ANALYSIS**

15          **A.    Plaintiff Is Likely to Succeed on the Merits**

16                  **1.    Under the Code of Arbitration Procedure, Sims Is Not
                            Required to Arbitrate Claims Brought By Parties Who**
17                          **Are Not Its "Customers."**

18          As a member of FINRA, Sims is required to arbitrate certain, but not all, disputes

19   submitted to the regulatory organization. In other words, unless compelled under the rules of

20   FINRA to defend a submitted claim in arbitration, member firms such as Sims may contest

21   FINRA's jurisdiction to adjudicate the dispute. Rule 12200 of the NASD Code of Arbitration

22   (the "Code"), entitled "Arbitration Under an Arbitration Agreement or the Rules of NASD," is

23   applicable to claims, such as the claims in this case, that were filed on or after April 16, 2007.

24   Section 12200 identifies those disputes which a member firm is required to arbitrate. Parties

25   must arbitrate a dispute under the Code if arbitration is either:

26                  (1) Required by a written agreement, or(2) Requested by the customer and

27                          (a) The dispute is between a customer and a member or associated
                                person of a member; and
28

1
2
3

(b) The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company."

4    Sims has not entered into any written agreements with any of the claimants with

5   respect to arbitration or any other matter. Accordingly, provision (1) of Rule 12200 is

6   inapplicable and Sims is required to arbitrate this matter only if provision (2) applies.

7   Provision (2) of Rule 12200 requires Sims to comply with the claimants' request to arbitrate this

8   dispute if the claimants are "customers" and if the dispute arises in connection with Sims's

9   business activities. Sims concedes that the dispute arises in connection with its business

10  activities because its agent, Drayer, had conversations about the bonds with Darden. Thus, the

11  question of whether Sims may be compelled to arbitrate this matter rests on a determination of

12  whether the claimants are "customers" for purposes of Rule 12200.

13        **2.    Defendants Are Not "Customers" of Sims Within the Meaning of the Code of Arbitration Procedure.**

14

15    As this Court recognized in *Brookstreet*, Darden and his clients can require Sims

15  to arbitrate these claims only if they meet the general definition of a customer: "'[O]ne involved

16  in a business relationship with [a FINRA] member that is related directly to investment or

17  brokerage services.'" *Brookstreet Securities Corporation v. Bristol Air, Inc.*, 2002 U.S. Dist.

18  LEXIS 16784 at *23-24 (N.D. Cal. Aug. 2002) (*quoting Fleet Boston Robertson Stephens, Inc. v.*

19  *Innovex, Inc.*, 264 F.3d 770, 772 (8th Cir. 2001)). In *Brookstreet*, two investors made their

20  investment decisions based on the recommendations of an investment advisor named Stroupe

21  who was unaffiliated with Brookstreet, a broker-dealer. Although Stroupe opened accounts for

22  the investors at Brookstreet and had other dealings with Brookstreet purportedly on their behalf,

23  this court held that the relationship between the investors and Brookstreet was not sufficiently

24  significant to permit a finding that the investors were "customers" of Brookstreet. Consequently,

25  it refused to compel Brookstreet to arbitrate their claims.

26        Here, none of the claimants ever opened or maintained a brokerage account with

27  Sims. Sims never provided any services to any of the claimants and has never received any

28

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

1  payments of money or anything of value from any of the claimants.  Therefore, guided by the

2  analysis and result in *Brookstreet*, claimants do not meet the definition of Sims's "customers."

3          Because no arbitration agreement exists with regard to the claims asserted against

4  Sims, and because the claimants are not "customers" within the meaning of Rule 12200 of the

5  Code, Sims cannot be compelled to arbitrate these claims without its consent.

6      **B.    Plaintiff Has No Adequate Legal Remedy and In the Absence**
           **of Relief Will Suffer Irreparable Harm.**

7

8          As a matter of fundamental fairness, Sims should not be required to expend time

9  and resources defending claimants' claims in an arbitration.  Time and resources spent in

10  arbitration are not compensable by monetary award.  *See, e.g., World Group Secs. v. Ko*, 2004

11  U.S. Dist. LEXIS 15726, No. C-03-5055, *22-23 (N.D. Cal. Feb. 11, 2004) (*citing Maryland*

12  *Cas. Co. v. Realty Advisory Bd. on Labor Rels.*, 107 F.3d 979, 985 (2d. Cir. 1977)).  Indeed,

13  courts have held that compelling a party to appear in arbitration when it did not agree to

14  arbitration would constitute *per se* irreparable harm.  *Gruntal & Co., Inc. v. Steinberg*, 854 F.

15  Supp. 324, 342 (D. N.J. 1994); *see also Textile Unlimited*, 240 F.3d at 786 (referencing as proper

16  the district court's finding that plaintiff would suffer irreparable harm if arbitration was not

17  stayed).

18          Sims has no adequate remedy at law to recover the monetary and human capital it

19  would expend defending an arbitration claimants had no right to bring in the first place.  If the

20  arbitration is not enjoined soon, Sims will be forced to spend its limited resources preparing for

21  it.  This would place a significant financial burden on Sims that would prove to be unnecessary if

22  this Court ultimately decides to issue a permanent injunction in this matter.  Accordingly, this

23  Court should issue a preliminary injunction enjoining the arbitration.

**IV.    CONCLUSION**

24          For the foregoing reasons, the Court finds that Sims is likely to succeed on the

25  merits, and that Sims has no adequate legal remedy and in the absence of relief will suffer

26  irreparable harm.

27          After full consideration of the briefs and evidence submitted by the parties in

28

1    support thereof, oral arguments of counsel, and for good cause shown, IT IS HEREBY

2    ORDERED THAT DEFENDANTS ARE ENJOINED AND RESTRAINED from pursuing their

3    claims in the pending FINRA arbitration against Sims.

4    **IT IS SO ORDERED.**

5

6    DATED: _____ __, 2007

7    _____

8                                  HON. MARTIN J. JENKINS
                                     United States District Court Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A/72277739.1/3005090-0000326991                    7